In re:
RIO VALLEY MOTORS COMPANY, LLC
    Debtor.                                 No. 11-06-11866 SS

**MEMORANDUM OPINION AND ORDER
(1) DENYING MOTION FOR RELIEF FROM STAY
FILED BY FORD MOTOR CREDIT COMPANY
AND JOINDER BY VALLEY NATIONAL BANK, AND
(2) AUTHORIZING EXPENDITURE OF CASH COLLATERAL**

Ford Motor Credit Company ("FMCC") filed a motion for stay relief (doc 50), in which Valley National Bank ("Bank") joined in a limited fashion (doc 55) and to which the Debtor in Possession ("Debtor") objected (doc 67). The motion came on for a final hearing on January 8, 2007. For the reasons set out in this memorandum opinion, the Court will deny the motion. The Court also enters a supplemental order on the cash collateral motions filed by the Debtor (docs 10, 11 and 17).[1]

**Background**

Debtor is a full service Lincoln Ford Mercury dealership located in Espanola, New Mexico. FMCC floor planned (financed) the Debtor's new and used car inventory. Debtor began

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (G) and (M); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P. There is pending in the United States District Court for the District of New Mexico a motion to withdraw the reference of this case (doc 84); until and unless the District Court withdraws the reference, this Court has jurisdiction to administer the estate. Rule 5011(c) F.R.B.P.

experiencing cash flow problems and sold some vehicles out of trust.  In the course of conducting floor planning audits, FMCC confirmed the sales out of trust.  Shortly thereafter the Debtor filed its chapter 11 petition, on October 13, 2006.

Debtor then sought Court approval to use cash collateral. Docs 10, 11 and 17.  The Bank concurred in the request; FMCC opposed it.  FMCC argued that the Debtor's finances were not strong enough to ensure repayment of the cash collateral used, and that Debtor should not be trusted since it had already sold vehicles out of trust.  Following an evidentiary hearing, the Court permitted the use of cash collateral for a short period of time in order to allow the Debtor to demonstrate that it could operate successfully enough to justify the further use of cash collateral and in order to allow the Debtor to promptly begin the search for a buyer of the business.  Doc 46 (amended minutes of oral ruling; doc 61 – order).  Following the next evidentiary hearing, the Court found that the Debtor had not promptly initiated the search for a buyer, contrary to instructions in the first cash collateral ruling, and that the Debtor's finances had deteriorated.  (The Court also found that, contrary to the Court's specific order, the Debtor had not turned over $315,000 of cash to FMCC.)  In consequence the Court denied the Debtor further use of cash collateral (doc 64).  Debtor filed a motion for reconsideration of that ruling (doc 75); upon

reconsideration, the Court declined to change the ruling (doc 82).[2] Despite the rulings, Debtor quite remarkably (and to its considerable credit) has continued to operate, and has filed a motion to sell the business (doc 100).

**Analysis**

FMCC's representative, Scott Schaeffer, testified that the principle balance due to FMCC was $1,963,685 together with, as of January 8, 2007, accrued interest and other charges of approximately $79,000, for a total of approximately $2,043,000. At the time of the cash collateral hearings, the Bank was owed approximately $513,000, of which about $183,000 is guaranteed by the Small Business Administration.[3] The total debto owed to these two creditors is approximately $2,556,000 if the $79,000 of FMCC accrued interest and charges are included, and $2,477,000 if not.

The evidentiary hearing established the following values for the collateral (in rounded off numbers):

---

[2] During the hearing FMCC and the Debtor disclosed a dispute about whether the Debtor was authorized to use cash collateral to pay taxes, New Mexico Motor Vehicle Department ("MVD") fees and similar costs (if any) for vehicles that the Debtor bought, sold or traded. The parties agreed on the record that the Debtor could use cash collateral for those purposes, and the Court, perhaps redundantly, approved the agreement orally. The decretal portion of this Order formalizes that approval.

[3] Presumably if the Small Business Administration pays out on its guaranty, it will be subrogated to a portion of the Bank's claim, secured or otherwise. So there will be no net gain to the estate.

```
Vehicles               $1,345,000
Parts                     100,000
FFE                        40,000
Accounts Receivable       100,000
Franchise                 250,000
Cash (including con-
 tracts in transit)       510,000
Trailers[4]                60,000
TOTAL                  $2,405,000
```

All these values are somewhat speculative, of course, as is any estimate of value. The actual values will be determined by, and as of the date of, the closing of the sale of the business.[5] For example, the FFE and parts may well bring more in a going-concern sale of the business than is listed here.

FMCC has a first lien on most of the collateral; FMCC and the Bank dispute who has the first lien on the franchise and on the trailers. The value of the disputed collateral is approximately $376,000, comprised of $250,000 for the franchise, $60,000 for the unsold trailers, and $66,000 for the proceeds in

---

[4] This item was not included in the calculation of assets that the Court used in making its cash collateral decisions. The Court had essentially treated the value of the trailers as a wash with the Bank's debt secured by the trailers (assuming the trailers do secure that debt). Since the Court is now counting the debt, it needs to also include the offsetting collateral value.

[5] This statement assumes of course that the sale will take place. As things stand now, it will not. The emergency motion to sell (doc 100) is subject to the two objections from the Bank and FMCC (docs 102 and 104 respectively), which upon reading are obviously intended to aid the Debtor in implementing its proposed sale. The Debtor is advised to consider them carefully and act upon them quickly.

trust account 295-9173xxx for the trailer sale proceeds.[6] That leaves a value of $376,000 for the contested collateral and of $2,029,000 for the balance of the collateral on which FMCC has an uncontested first lien for its claim of $1,964,000 or $2,043,000.

FMCC argues that none of the foregoing evidence need be considered, since the Court already made factual determinations of asset values and debt in the cash collateral orders. Those values were determined at a different time and in a different context. During the course of this case, as would be expected, the values of the collateral have changed as Debtor has bought and sold vehicles, used inventory in the repair of vehicles, etc. Arguably the most glaring example of change is the evidence that the market value of the franchise is $250,000, which is what has actually been offered to the Debtor. Emergency Motion to Sell (doc 100). This figure is considerably less than the $600,000 which the Debtor continues to show on its exhibits.[7] The amount

---

[6] $66,283.39 appears in Debtor exhibit G from the January 8 hearing; that this is the correct trust account is confirmed by the account number from Debtor exhibit G from the November 30 hearing. The November 30 exhibit G showed a balance of $2,681.19, so the almost $64,000 increase suggests the sale of two or more trailers. At the same time the Debtor continues to list the value of the unsold trailers as $60,000, which is about the same amount -- $65,000 -- it showed when the trailer trust account proceeds were at $2,681 on or about November 30 (Debtor exhibit D from November 30 hearing). The Court has no explanation for that seeming anomaly.

[7] The Court has some nagging doubt about the accuracy of Debtor's collateral values. Partly that is occasioned by the Debtor's somewhat chaotic presentation on November 30 of its

Page 5 of 10

Case 06-11866-s11   Doc 106   Filed 02/06/07   Entered 02/06/07 13:22:28 Page 5 of 10

of the debt may have changed also; FMCC alleges that it has incurred, and is entitled to be paid, an additional $79,000. As a result, numbers that were current and useful weeks ago need to be updated, since a motion for stay relief (or, for that matter, a motion to use cash collateral) needs to be based on facts as they currently exist rather than what they were earlier, including on the petition date.

    A consideration related to the issue of what evidence to consider arises from the difference between the request to use cash collateral and a motion to modify the stay in order to repossess collateral. That is, the Court's previous orders denying the use of cash collateral do not determine the outcome of this motion for stay relief. An order allowing the use of cash collateral necessarily results in the decrease of the collateral securing the claim. An order denying stay relief does not by itself result in the decrease in the collateral. Therefore all other things being equal, an order denying stay relief does less harm, or at least poses less risk, to a creditor than an order allowing the use of cash collateral. So the previous orders denying the use of cash collateral do not preclude a review of the current facts of the case, and the

---

finances. The doubt is reinforced by the Debtor's inexplicable continued use of the $600,000 figure for the franchise when Mr. Trujillo testified that he expected an offer of $350,000 for the franchise.

introduction of evidence about those facts.

Therefore FMCC's oral motion to preclude the introduction of new evidence on the value of the collateral is overruled.

The motion for stay relief relies on the first two subsections of §362(d), which provide in relevant part as follows:

> [T]he court shall grant relief from the stay...
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if --
>     (A) the debtor does not have an equity in such property; and
>     (B) such property is not necessary to an effective reorganization....

FMCC argues that its interest is not being adequately protected, in part because of the Debtor's sale of vehicles out of trust. Now that the Debtor appears to be complying with its fiduciary obligations as a chapter 11 debtor in possession, the sales out of trust have presumably ended.

It appears that FMCC's claim may be marginally oversecured ($2,029,000 - $1,964,000) or undersecured once the charges begin to be added in ($2,029,000 - $2,043,000). These figures do not take into account the dispute about whether FMCC is in a first position on either the franchise or the trailers, but until that issue is decided (which this Court needs to do), it cannot be said with any certainty that FMCC has any significant equity in the collateral. That being the case, FMCC is not entitled to

adequate protection at this stage of the case.  See <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365 (1988).  Therefore no grounds exist for modifying the stay under §362(d)(1).

The collateral values also bring into question whether the Debtor has an equity in the collateral.  It appears that it does not ($2,405,000 – [$1,964,000 + $513,000 =] $2,477,000 = <$72,000>).  But the requirements of §362(d)(2) also require a showing that the property is not needed for an effective reorganization.  Since the term "reorganization" includes a measured liquidation, §1123(a)(5)(D), such as the Debtor is currently undertaking, assuredly the property is needed for an effective reorganization.  In consequence there is no basis for modifying the stay under §362(d)(2).

**Conclusion**

FMCC has not shown that it has any significant equity in the property of the estate beyond what it is owed.  FMCC has shown (or, perhaps more accurately, Debtor has shown) that Debtor likely has no equity in the property of the estate; Debtor has established that the property at issue is necessary for an effective reorganization.  §362(d)(1), (d)(2) and (g).  Therefore the motion for stay relief must be denied.  Although the Bank joined in the motion for stay relief, it did not appear at the final (evidentiary) hearing, so its joinder in the request for

stay relief is also denied.

In closing argument, FMCC suggested a short period of time to permit the Debtor to close the sale of the business. The time suggested by FMCC was too short to be useful to the Debtor. The Court will not impose at this time a deadline for completing the sale on pain of modification of the stay. But as stated in note 5 above, the Debtor is strongly urged to accept the helping hand tendered by FMCC and the Bank in order to consummate the hoped-for sale. Otherwise, stay relief may well be appropriate. Should the Debtor not move smartly to complete the sale, the Court will entertain a renewed motion for stay relief on shortened notice.

IT IS THEREFORE ORDERED that Ford Motor Credit Company's motion for stay relief (doc 50) and Valley National Bank's joinder therein (doc 55) are denied without prejudice.

IT IS FURTHER ORDERED that the Debtor may use cash collateral, derived from the proceeds of sales of vehicles, to pay taxes, MVD fees and any similar costs (if any) on all vehicles sold or bought, including those traded by the Debtor.

/s/ James S. Starzynski
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

Walter L Reardon, Jr
Local counsel for debtor
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

William L Needler
Attorney for Debtor
555 Skokie Blvd #500
Northbrook, IL 60062

Alice Nystel Page
Office of US Trustee
PO Box 608
Albuquerque, NM 87103-0608

Donald Cram
Attorney for FMCC
Severson & Werson
One Embarcadero Ctr
San Francisco, CA 94111

Duane Geck
Attorney for FMCC
Severson & Werson
One Embarcadero Ctr
San Francisco, CA 94111

James Jurgens
Attorney for VNB
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976

Jappy Dickson
Southwest Brokerage Company
Lagustrurn Court
Arlington, TX 76017