UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
RIO VALLEY MOTORS COMPANY, LLC
    Debtor.                                  No. 11-06-11866 SS

**MEMORANDUM OPINION ON AUTO-OWNERS
INSURANCE COMPANY AND WINSLOW FORD'S
<u>APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE</u>**

This matter is before the Court on the Motion of Auto-Owners Insurance Company ("AOIC") and Winslow Ford ("Winslow") (together "Movants") for Payment of Administrative Expense Pursuant to Court Order Granting Claim ("Motion"). Doc 290. The Court rules that Movants had no lien on the vehicle, the delivery of which eventuated in the filing of the Motion, and that the administrative claim aspect of the Motion is not ripe for ruling because the required notice of the Motion was not given.

**BACKGROUND**

Debtor, a car dealership in northern New Mexico, filed its Chapter 11 case on October 13, 2006. On the petition date, Debtor was in the midst of trading an item of inventory with another dealer, Winslow. The trade required each party to send to the other party the vehicle requested by the other party along with a check in payment for the vehicle that the sending party was receiving.[1] After the bankruptcy was filed, Debtor ended up

---

[1] For more details, see the Court's Findings of Fact and Conclusions of Law, doc. 288 (March 24, 2008). Such trades are a common industry practice, although they are more usually accomplished by making adjustments to the floor financing at the respective dealerships. <u>Id.</u> at 1-2.

with a Ford F-250 Super Duty and a check from Winslow; however, Winslow ended up with a vehicle but no check. Debtor promptly sold the Ford F-250 to a customer for a profit. Winslow received neither the sale proceeds nor any other payment from Debtor. Instead, Winslow was paid by its insurance company Auto-Owners Insurance Company ("AOIC"), which filed a "Motion to File Administrative Claim" in May, 2007. Doc 164.

Following the evidentiary hearing on that motion, the Court found that Winslow knew of the bankruptcy filing shortly after it took place. In fact, the bankruptcy filing was advanced as the reason that the payment could not be made. See Doc 303, p.1; doc 164, p.3. However, neither AOIC nor the Debtor proved to the Court on what date the transaction occurred. Nevertheless, the Court ruled that if the transaction were post-petition AOIC had an administrative priority under Section 503(b)(1)(A); but if the transaction were pre-petition AOIC had an administrative priority under Section 503(b)(9). Doc 288. Because AOIC had not actually filed an administrative claim, the Court ordered it to file one within 15 days. Doc 289. AOIC and Winslow filed the administrative claim in the amount of $43,270.64. Doc 290.

Objections were filed by Valley National Bank ("VNB")(doc 293), Ford Motor Credit Company ("FMCC")(doc 294) and the Debtor-in-Possession (doc 295). Movants filed a reply to the objections (doc 297). At the preliminary hearing on the Motion the Court

asked for briefs on the following four issues: 1) Whether Winslow had a lien on the Ford F-250 Super Duty which is sold to Rio Valley, and if so, did the lien remain in existence when Winslow transferred the vehicle to Rio Valley; 2) Whether Winslow's procedural due process rights were violated because it never received direct notice of a November 3, 2006 hearing, which ultimately resulted in VNB and FMCC obtaining administrative priority claims pursuant to Section 507(b) that had "priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Sections 503(b) or 507(a)" of the Bankruptcy Code; 3) What is the effect of Section 507(b), and is the Order resulting from the November 3, 2006 hearing binding; and 4) Did any diminution in value occur in VNB's or FMCC's interest in Debtor's collateral, and if so, is it even relevant to the Motion.  The parties each filed their briefs, Movants filed a reply brief, and the matter is ready for ruling.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) and (K).

VNB has two objections to payment: 1) procedurally, no notice of the Motion was sent to the creditor matrix as required by Bankruptcy Rule 2002, and 2) substantively, all cash is cash collateral which the Debtor is forbidden to use.  FMCC has two objections to payment: 1) FMCC and VNB have a lien on all of Debtor's assets, and 2) FMCC and VNB have an administrative claim with priority over all other Section 503(b) and 507(a) claims.

Debtor joins VNB's and FMCC's objections, but also cites its inability to use cash collateral to pay the claim, and argues that the super priority administrative claims of FMCC and VNB have not yet been determined.[2]

**DISCUSSION**

**1. Movants had no lien.**

A "security interest" is an interest in personal property or fixtures that secures payment or performance of an obligation. Section 55-1-201(35) N.M. Stat. Ann. A "security agreement" is an agreement that creates or provides for a security interest. Section 55-9-102(72) N.M. Stat. Ann. Section 55-9-203(b) N.M. Stat. Ann. describes when a security interest is enforceable:

> [A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
> 1) value has been given
> 2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> 3) one of the following conditions is met:
>    (A) the debtor has authenticated a security
>    agreement that provides a description of the
>    collateral...

The only document that Movants assert is a security agreement is a Winslow invoice that lists Debtor as "purchaser" and identifies the subject vehicle. It is signed by Rick Trujillo.

---

[2] To date, there has been no bar date set for filing administrative claims.

Case 06-11866-s11    Doc 324    Filed 06/08/09    Entered 06/08/09 15:20:17 Page 4 of 8

For an instrument to qualify as a security agreement it must demonstrate an intent to create a security agreement. <u>Bank of America, N.A. v. Outboard Marine Corp. (In re Outboard Marine Corp.)</u>, 300 B.R. 319-24 (Bankr. N.D. Ill. 2003)(The "common thread" in all cases finding a document is a security agreement is the "intent to create a security agreement on the face of the instruments executed by the debtor.")  See also <u>In re Hoyt's, Inc.</u>, 117 B.R. 226, 230 (Bankr. N.D. W.Va. 1990)("In the absence of a writing evidencing the intent of the debtor to grant a creditor a security interest in certain property to secure a specific obligation, the court cannot infer a security agreement.")  The document in this case does not evidence an intent to create a security interest.  Movants have no security agreement and no enforceable security interest.  The sale of the Ford to Debtor was an unsecured transaction.  The Court therefore does not need to address issues of lien priority.

**2. Whether Movants have an administrative claim has yet to be finally decided and therefore the assertion that Winslow is not being afforded due process on its claim is premature.**

VNB's procedural objection that the issue of Movants' administrative expense is not properly before the Court is well taken.  Bankruptcy Code Section 503(b) provides:

> (b) <u>After notice and a hearing</u>, there shall be allowed administrative expenses ... including --
>     (1)(A) the actual, necessary costs and expenses of
>     preserving the estate ...
>     (9) the value of any goods received by the debtor
>     within 20 days before the date of commencement of

Page -5-

>     a case under this title in which the goods have
>     been sold to the debtor in the ordinary course of
>     such debtor's business.

(Emphasis added.) The docket sheet in this case does not show that Movants served either the earlier motion or this Motion on the creditor body. "'Notice' pursuant to the Bankruptcy Rules of intent to claim an administrative expense priority requires notice to parties other than the debtor." In re Bellanca Aircraft Corp., 56 B.R. 339, 400 (Bankr. D. Minn. 1985).

Therefore, the Court's earlier finding that AOIC had an administrative expense under either Section 503(b)(1) or 503(b)(9) was premature. While it appears that the Movants will eventually prevail on their administrative expense claim, all creditors must first be given the opportunity to file their objections to this treatment. The problem is easily addressed by permitting AOIC to notice out the earlier motion to the creditor body. The Court can quickly conduct a hearing on any objection. On the other hand, if, as is likely, no further objection is received, the Court's finding in doc 288 that AOIC has a priority claim will stand.

3. **Whether Movants are entitled to payment on the administrative claim depends on whether any funds are available for payment of any administrative claims.**

However, even if Movants establish entitlement to administrative expense treatment it appears highly unlikely to the Court that any funds will ever become available to pay

administrative claims. Both FMCC and VNB are secured creditors and appear not to have been paid in full. All assets have been sold and the time periods for filing preference or other avoidance actions has passed. Currently, there are no non-cash collateral funds on hand. If all property is subject to senior liens, no funds will be available to pay administrative expenses, including those of AOIC.

To the extent that FMCC and VNB are being paid from their collateral, the finding that Winslow had no secured claim precludes the need for any further hearing on that issue. To the extent that FMCC or VNB are being paid from cash collateral funds, the Court would need to consider whether Winslow was deprived of due process by the entry of the cash collateral orders, and if so, whether any objection that would have been filed by Movants could have caused the cash collateral orders to be not entered.

**CONCLUSION**

The Court finds and concludes that Movants had no lien on the vehicle after its sale to Debtor. The Court also finds that the Motion for Payment of Administrative Expense Pursuant to Court Order Granting Claim is not ripe for ruling because the required notice was not given of the Motion to File Administrative Claim (doc 164). The Court will defer ruling on the Motion for Payment of Administrative Expense Pursuant to

Court Order Granting Claim until after 1) Movants give notice to all creditors and parties in interest of their Motion to File Administrative Claim (doc 164) with a deadline for filing objections, and 2) any objections filed are resolved.  The Court will also enter an order prohibiting Debtor or any successor trustee from paying any Chapter 11 administrative expenses without further order of the Court.

                                            Honorable James S. Starzynski
                                            United States Bankruptcy Judge

Date Entered on Docket:  June 8, 2009

Copies to:

Walter L Reardon, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Christopher J. Delara
PO Box 93880
Albuquerque, NM 87199-3880

Donald H. Cram, III
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

Duane Geck
Severson & Werson
One Embarcadero Ctr, Suite 2600
San Francisco, CA 94111

James Jurgens
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976

Alice Nystel Page
PO Box 608
Albuquerque, NM 87103-0608